IN RE J.F.

[Cite as *In re J.F.*, 121 Ohio St.3d 76, 2009-Ohio-318.]

---

3. On October 20, 2008, Nwankwo moved the court to seal the record in this case pursuant to Gov.Bar R. 12(E). We deny that motion.

(No. 2007–2239—Submitted October 15, 2008—Decided February 4, 2009.)

MOYER, C.J.

## I

{¶ 1} At issue in this case is the authority of a juvenile court to order a juvenile to serve a previously suspended commitment when the juvenile violates the terms of community control after the period of probation supervision has been terminated but while other elements of community control remain in effect. For the reasons that follow, we affirm the decision of the court of appeals and hold that a juvenile court retains jurisdiction to order a juvenile to serve a previously suspended commitment when the juvenile violates an unexpired condition of community control.

## II

{¶ 2} The appellant in this case is a child, referred to as J.F. In 2004, J.F. was adjudged delinquent following his admission to seven charged offenses, six of which would have been felonies if perpetrated by an adult. The juvenile court committed J.F. to the Department of Youth Services ("Youth Services"), but suspended that commitment based on several conditions.

{¶ 3} According to the trial court's entry of March 24, 2004, the conditions of the suspended commitment included compliance with monitored time[1] until age 18, completion of community control, and payment of fines, court costs, and restitution. After reviewing the March 2004 entry of the juvenile court, we conclude that the court used the term "community control" in place of "probation supervision." The court of appeals came to this same conclusion. *In re J.F.*, Greene App. No. 06–CA–123, 2007-Ohio-5652, 2007 WL 3071879, ¶ 51. The

---

1. "Monitored time" is "a period of time during which an offender continues to be under the control of the sentencing court * * *, subject to no conditions other than leading a law-abiding life." R.C. 2152.02(U) and 2929.01(Z).

transcripts of the dispositional hearing show that the trial court intended to impose probation supervision; while explaining the conditions of suspended commitment, the court stated that J.F. would have to "successfully complete probation with Ms. Lyons." Accordingly, when the court's entry directed that J.F. would be "placed on community control under the guidance of Linda Lyons," the juvenile court actually imposed probation supervision under the guidance of Linda Lyons.

{¶ 4} In March 2006, the juvenile court held a probation-termination hearing regarding J.F., in which the conflation of the terms "community control" and "probation" persisted. Although the purpose of the hearing was to terminate J.F.'s intensive probation supervision, the resulting entry declared that J.F.'s "status on Intensive Community Control" was terminated. That same entry provided that J.F. would be responsible for court fines and costs and the completion of community service.

{¶ 5} Later in 2006, J.F. was charged with two new offenses that would have been misdemeanors if committed by an adult. J.F. admitted to having committed these offenses. At the dispositional hearing for these new offenses, the juvenile court ordered J.F. to serve the previously suspended commitment to Youth Services for one of the 2004 offenses.

{¶ 6} J.F. appealed, raising four assignments of error. The Second District Court of Appeals rejected his first assignment of error, which is the issue he raises in this appeal, but it reversed and remanded the case on J.F.'s second assignment of error, holding that J.F.'s rights to due process had been violated, because the juvenile court had failed to provide J.F. with prior notice that he could be subject to commitment for violating community control if found to have committed the two new 2006 offenses, and because J.F. was not given notice of which conditions of community control he had allegedly violated. Having sustained J.F.'s second assignment of error, the court of appeals declined to address assignments of error three and four. We accepted J.F.'s discretionary appeal. *In re J.F.*, 117 Ohio St.3d 1423, 2008-Ohio-969, 882 N.E.2d 444.

### III

{¶ 7} The sole issue in this appeal is whether the juvenile court had the statutory authority to order J.F. to serve the previously suspended commitment to Youth Services. We hold that it did.

{¶ 8} The syllabus in *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, states: "A juvenile court does not have the jurisdiction to reimpose a suspended commitment to a Department of Youth Services facility after a juvenile has been released from probation." According to J.F., *In re Cross* requires us to reverse the court of appeals decision, because the juvenile court in

its March 2006 entry had terminated J.F.'s period of community control before his suspended commitment was imposed, thereby precluding the juvenile court from exercising jurisdiction. We disagree with J.F.'s premise that the juvenile court terminated community control in March 2006.

{¶ 9} In January 2002, the General Assembly replaced the rubric "probation" in juvenile dispositions and adopted new dispositional options under the heading "community control."

{¶ 10} "Community control," as described in R.C. 2152.19, replaced "probation," as described in former R.C. 2151.355, Am.Sub.H.B. No. 215, 147 Ohio Laws, Part I, 1125, and 148 Ohio Laws, Part IV, 9447, which was the subject of our decision in *In re Cross*. *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, at ¶ 11. An order of "probation" under former R.C. 2151.355, encompassed the court's broad, discretionary power to craft appropriate controls for delinquent juveniles, enforced through ongoing judicial oversight. Under former R.C. 2151.355, it was the dispositional order of probation itself that enabled a court to impose and monitor the juvenile's compliance with the conditions of probation.

{¶ 11} In contrast, R.C. 2152.19 uses the term "community control" to describe discretionary court-ordered and court-supervised requirements on the behavior of delinquent children. R.C. 2152.19. Under R.C. 2152.19, a dispositional order of community control may include one or several conditions—such as "intensive probation supervision," "basic probation supervision," and "community service"—all of which are subject to ongoing supervision by the court. Probation, no longer a stand-alone disposition, has become a subcategory or optional element of community control. It follows that the expiration of probation supervision—as one component of an order of community control—does not automatically trigger the loss of the juvenile court's jurisdiction; as long as other community-control sanctions remain in effect, the juvenile remains subject to the court's supervision.

{¶ 12} This conclusion is consistent with *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258. The broad authority granted to juvenile courts in former R.C. 2151.355 to place a juvenile on probation subject to " 'any conditions that the court prescribes,' " survives in R.C. 2152.19, but the term "probation" is replaced by "community control." (Emphasis deleted.) Id. at ¶ 26, quoting former R.C. 2151.355(A)(2). R.C. 2152.19 allows a court to impose "any sanctions, services, and conditions that the court prescribes." Once imposed, such conditions provide "the tether that allows a court to maintain some connection with a juvenile delinquent." *In re Cross* at ¶ 27. This jurisdiction over a delinquent juvenile, which was attendant to an order of probation under former R.C. 2151.355, now accompanies an order of community control under R.C. 2152.19.

{¶ 13} When a court issues an order of community control, the jurisdiction of the court exists only so long as the order itself remains in effect. *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, at ¶ 27–28. In the absence of a statutory limitation on its duration, an order of community control may be indefinite in duration, lasting until the child reaches age 21, or it may be definite, effective until it expires or is modified by the court. Id. at ¶ 27–28; R.C. 2152.22(A). Unmodified portions of an original order will remain in effect unless otherwise specified.

{¶ 14} Thus, where several conditions are placed on a juvenile in an order of community control, the termination of only some of those conditions will not result in the termination of the order. Any remaining conditions of community control will continue in effect, thereby conferring continuing jurisdiction on the court. A court may order a juvenile to serve a previously suspended commitment after probation supervision has been terminated when the juvenile violates a separate, unexpired condition of community control.

{¶ 15} For instance, if a juvenile court suspended a juvenile's commitment and issued an order of community control requiring intensive probation supervision and a period of community service, the court could subsequently remove the condition of intensive probation supervision but would retain jurisdiction over the child until the completion of the community-service period. In such a case, the possibility of the suspended commitment would last until the remaining condition—the community-service period—was completed.

## IV

{¶ 16} Applying this analysis to the present case, we hold that the juvenile court had continuing jurisdiction over J.F., given that unexpired conditions of community control remained in effect even after J.F.'s probation supervision was terminated. The juvenile court intended to—and did—release J.F. from probation supervision, by order in March 2006. Although that order, and the March 2004 order that it modified, mistakenly referred to probation as "community control," this mistake is irrelevant for purposes of the issue before us, because the March 2006 order made clear that J.F. would be subject to ongoing community-control sanctions: he was compelled to complete community service. The court retained jurisdiction to ensure that J.F. completed his community service.

{¶ 17} J.F. urges us to hold that the community service in the March 2006 order was not an element of community control, because, he argues, it was imposed in lieu of fines and court costs, as provided for under R.C. 2152.20(D) for indigent juveniles. However, that statute provides that if community service is imposed on an indigent child in lieu of a financial sanction, then it shall be imposed under R.C. 2152.19(A). Therefore, community service imposed in lieu of

financial sanction for indigent delinquent children is, by statute, an element of community control.

{¶ 18} Further, the March 2006 order did not refer to the monitored-time requirement of the March 2004 order, thereby leaving that condition in effect. This is consistent with the probation officer's request at the hearing that the court release J.F. from intensive probation supervision but leave the monitored time in effect. Monitored time is an element of community control under R.C. 2152.19, and J.F. was to comply with monitored time until age 18 under the terms of the March 2004 order.

{¶ 19} As of August 2006, when J.F. committed the new offenses, J.F. had not yet reached the age of 18; therefore his community-control sanction of monitored time had not expired. Furthermore, J.F. failed to meet the condition of monitored time—that he lead a law-abiding life—when, as he admitted in a 2006 hearing, he committed two offenses in August 2006 that would be misdemeanors if committed by an adult.

{¶ 20} We conclude that the juvenile court had continuing jurisdiction over J.F. to enforce the ongoing conditions of community control. Therefore, the juvenile court was authorized to order J.F. to serve the previously suspended commitment to Youth Services when J.F. violated those conditions.

{¶ 21} For the foregoing reasons, we affirm the holding of the court of appeals and remand the cause to the Greene County Court of Common Pleas, Juvenile Division, for further proceedings consistent with the decision of the Second District Court of Appeals.

Judgment affirmed
and cause remanded.

O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

PFEIFER, LUNDBERG STRATTON, and LANZINGER, JJ., dissent.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 22} The issue before us is whether the juvenile court had the statutory authority to order J.F. to serve the previously suspended commitment to the Department of Youth Services. I would answer the question in the negative and hold that a juvenile's suspended commitment may not be imposed after the juvenile has successfully completed and been released from his community control. In my view, when J.F.'s community control ended on March 1, 2006, the juvenile court's jurisdiction ceased.

{¶ 23} This court has previously held that "[a] juvenile court does not have the jurisdiction to reimpose a suspended commitment to a Department of Youth

Services facility after a juvenile has been released from probation." *In re Cross,* 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, syllabus. When the juvenile's probation is terminated, "[t]here is no statutory basis for the court's continuing jurisdiction * * *." Id. at ¶ 12.

{¶ 24} At the March 2006 hearing, in addressing J.F., the court stated, "[Y]ou've successfully completed probation, I hear that you've gone above and beyond what you need to do, so I'm terminating you successfully today."

{¶ 25} The court's March 3, 2006 entry terminating community control made no mention of monitored time. Although the appellate court cited J.F.'s probation officer's comment regarding monitored time at the community-control-termination hearing as evidence that J.F. continued to be under the juvenile court's jurisdiction, *In re J.F.,* 2d Dist. No. 06–CA–123, 2007-Ohio-5652, 2007 WL 3071879, at ¶ 51, the juvenile court did not state on the record that it was adopting the probation officer's recommendation. A court speaks through its journal entries. *State ex rel. Worcester v. Donnellon* (1990), 49 Ohio St.3d 117, 118, 551 N.E.2d 183. Therefore, the March 3, 2006 entry terminating J.F.'s community control and allowing him to obtain his driver's license, without mentioning "monitored time," controls. If the court intended to maintain continuing jurisdiction over J.F., the court could have continued him on community control. It did not. It terminated his community control.

{¶ 26} In my view, monitored time is an element of community control. According to R.C. 2929.01(Z), "monitored time" is a "period of time during which an offender continues to be under the control of the sentencing court or parole board, subject to no conditions other than [to lead] a law-abiding life." R.C. 2929.17 lists monitored time as one of several nonresidential sanctions that may be imposed when there is no mandatory prison term. Similarly, R.C. 2152.19(A)(4) (disposition orders for delinquent children), lists monitored time as an option under community control.

{¶ 27} Thus, monitored time is an element of community control, not a disposition itself. If community control is terminated, so, too, is monitored time. On March 3, 2006, the juvenile court terminated J.F.'s community control and told him that he had "successfully completed probation." J.F. relied on the March 3, 2006 entry and the statements made by the court at J.F.'s hearing. In my view, due process mandates that juveniles, too, deserve finality in the judgments rendered against them. By this opinion, the majority has, in essence, nullified the holding in *In re Cross,* 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, and allowed a probation officer's comments to supersede a judgment entry.

{¶ 28} When J.F.'s community control ended on March 1, 2006, the juvenile court's jurisdiction to impose the suspended commitment ceased. The two new offenses with which J.F. was subsequently charged should have been considered

independent of any prior adjudication. I respectfully dissent and would reverse the judgment of the court of appeals and remand the cause to the juvenile court.

PFEIFER and LANZINGER, JJ., concur in the foregoing opinion.

---

Stephen K. Haller, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for appellee, the state of Ohio.

Timothy Young, Ohio Public Defender, and Angela Miller, Assistant State Public Defender, for appellant.

Katherine Hunt Federle and Angela Marie Lloyd, urging reversal for amicus curiae, Justice for Children Project.